UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HAROLD E. GRIST, JR.,<br><br>                    Petitioner,<br><br>vs.<br><br>WARDEN YORDY,<br><br>                    Respondent. | Case No. 1:12-cv-00422-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Pending before the Court is Petitioner's Second Amended Petition for Writ of Habeas Corpus (Dkt. 16), which is now fully briefed and ripe for adjudication. (Dkt. 22, 23.) The Court takes judicial notice of the record from Petitioner's state court proceedings lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Having carefully reviewed the record and considered the arguments of the parties, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

## BACKGROUND

Petitioner was convicted of seven counts of lewd conduct with a minor, two counts of sexual battery of a minor, and one count of sexual abuse of a minor after a jury trial in the Second Judicial District Court in Nez Perce County, Idaho. Petitioner's convictions at his first trial were vacated on direct appeal after a finding of error in the admission of improper propensity evidence of prior acts of sexual misconduct against a different victim in *State v. Grist*, 147 Idaho 49, 205 P.3d 1185 (2009), but he was convicted after a second trial. Petitioner testified at the first trial, but chose not to testify at the second trial.

After conviction in the second trial, Petitioner filed a direct appeal, *State v. Grist*, 152 Idaho 786, 275 P.3d 12 (Ct. App. 2012), where the appellate court modified Petitioner's aggregate determinate sentences from 25 years to 15 years, consistent with the sentence he received from the same judge after the first trial. Petitioner then filed a post-conviction action, followed by an appeal, which was unsuccessful. *Grist v. State*, No. 41409, 2015 WL 738124 (Idaho Ct. App. Feb. 23, 2015).

## PRELIMINARY MOTIONS

Respondent has filed a Motion to Strike Traverse Attachments. (Dkt. 24.) Respondent requests that the Court strike two documents that Petitioner alleges are pages from a juror questionnaire allegedly completed by two different jurors who served on the

**MEMORANDUM DECISION AND ORDER - 2**

jury in Petitioner's second trial.[1] (Dkt. 23, pp. 13-15.) Respondent argues that these documents were never presented to the state appellate courts and that they lack sufficient foundation to merit consideration for any purpose.

Generally, the merits of the claims in a federal habeas corpus petition are decided on the record that was before the state trial and appellate courts. *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). If a petitioner desires to bring new evidence on federal habeas review that has not been presented to the state courts, *and* he failed to develop the factual basis of the claims in state court because of "lack of diligence or some greater fault, attributable to" him or his counsel, then he must meet the requirements of § 2254(e)(2). *Williams v. Taylor*, 529 U.S. 420, 432 (2000).

After a review of the record, the Court has determined that it will decide the jury claims (One(a) and Three) on the merits. Petitioner has not sufficiently shown that he is

---

[1]     Each partial questionnaire consists of question numbers 8 through 15 only. The questions tend to reflect the type of inquiries the clerk of court might have prepared, e.g., "Is there anything we can provide that would make jury service more enjoyable or more comfortable, e.g., magazines, types of food or beverage, cards?" The objectional portions of the questionnaires are as follows:

Questionnaire #1:
Q.      Did you observe anything about the jury facilities, court personnel, other jurors, or the operation of the jury system which disturbed you or which you did not understand?
A.      Yes. There were a couple of jurors who knew the victim's mother as well as the defendant. They thought they would not be allowed to sit on the jury.

Questionnaire #2:
Q.      Is there anything else you would like us to know that has not been covered in this questionnaire?
A.      I feel horrible to convict a person with the amount of evidence that the prosecution provided.

(Dkt. 23, pp. 14-15.)

**MEMORANDUM DECISION AND ORDER - 3**

not at fault for failing to develop the facts supporting his claims in state court. Petitioner, therefore, must meet § 2254(e)(2) to be able to bring the jury questionnaires in this action. Section 2254(e)(2) requires that a petitioner show that his claims are based either on a new retroactive rule of constitutional law *or* on a factual predicate that could not have been previously discovered through the exercise of due diligence, and that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *See* § 2254(e)(2)(A)&(B).

Setting aside Respondent's foundational objections regarding the juror questionnaires, the Court finds it is obvious that the information (whether or not reduced to writing) would have been available to Petitioner directly after trial. Petitioner has provided no explanation why the questionnaires could not have been obtained and presented to the trial court on a motion for a new trial, during Petitioner's investigation of the post-conviction action, or during his counsel's investigation of the post-conviction action. Therefore, Petitioner is not entitled to bring the questionnaires for the first time in federal habeas review, and Respondent's Motion will be granted.

Petitioner has filed a Request for Clarification. (Dkt. 30.) He does not understand why this case is considered fully briefed if Respondent's Motion for an Extension of Time to File an Answer is still pending. However, that motion was granted many months after it was filed, and by that time, the Reply/Traverse had been filed. Because no other pleadings are permitted, the Petition was then (and is now) fully briefed and ripe for adjudication. That the extension motion was filed with the belated Answer but not

**MEMORANDUM DECISION AND ORDER - 4**

granted until after the Answer was filed is of no consequence, because the extension motion was granted in due course, rendering the Answer timely.

Petitioner has filed a "Motion for Review Informally." (Dkt. 31.) This document is an unnecessary motion to review another motion found at Docket 32, and it is unclear what Petitioner is requesting when he requests an "informal" review or "informally" requests review, whichever the case may be. All items on the docket are formally reviewed by the Court, and items filed by pro se litigants are liberally construed, to the extent permitted by the law. Because the Court has also reviewed the pending motion at Docket 32, the Court will deem the Motion for Review Informally moot.

Petitioner has filed an objection to the Order of Reassignment and a Motion to Proceed. (Dkt. 32.) It appears that Petitioner misunderstands the reason and purpose of reassignment. A United States magistrate judge has no authority to enter final orders in cases unless all parties before the Court consent to that jurisdiction. The record reflects that not all parties have filed a consent; therefore, reassignment to a United States District Judge is necessary. Petitioner's objection cites no reason that this Court, in particular, should not hear his case. Petitioner's case has been reassigned for final adjudication—meaning either the granting or the denying of the Second Amended Habeas Corpus Petition. Petitioner's particular arguments about personal and subject matter jurisdiction do not apply, and he is mistaken in his assertion that reassignment has anything to do with the merits of his case. Accordingly, the objection will be overruled and the Motion to Proceed will be granted, to the extent that Petitioner's case is now ready for, and will proceed to, adjudication of the merits of his Petition.

**MEMORANDUM DECISION AND ORDER - 5**

## REVIEW OF SECOND AMENDED PETITION

### 1. Background

At the time of the incidents that formed the basis of the criminal charges against Petitioner, J.O. was a ten-year-old minor female, but she did not bring forward her allegations of sexual abuse until after she had reached the age of majority. Petitioner was the boyfriend of J.O.'s mother, Connie, from the time J.O. was nine. J.O. testified at trial that, when she was ten, Petitioner began touching her inappropriately. She told her mother once, but Petitioner denied the allegations, and, for a while, the touching stopped. Petitioner began the behavior again, which continued until J.O. graduated from high school and left home.

There was little corroborating evidence regarding the sexual misconduct allegations. J.O. and her brother, Jeremy, both testified that on one occasion Jeremy came into the house and saw Petitioner performing a sexual act on J.O. Neither she nor her brother reported anything to their mother. When Jeremy was 18 and was preparing to move into J.O.'s household, J.O. told her mother about the long history of inappropriate behavior for the first time. Petitioner was later charged with seven counts of lewd conduct with a minor under sixteen, one count of sexual abuse of a minor under sixteen, and two counts of sexual battery of a minor sixteen or seventeen. (See State's Lodgings.)

 Petitioner was found guilty by a jury in his first trial, and he was sentenced to fifteen years to life in prison, but his convictions were vacated when the Idaho Supreme Court determined that the district court erred by permitting the State to call the daughter of Petitioner's ex-wife, who testified that, when she was a minor, Petitioner used to touch

her breasts and buttocks. The Idaho Supreme Court held that the State should not have been allowed to introduce evidence of prior bad acts that were not relevant to any issue other than propensity. (*See State v. Grist*, 205 P.3d 1185 (2009).)

In the second jury trial on the charges involving J.O., Petitioner sought to introduce impeachment evidence that Jeremy had received a felony conviction of theft in the state of Washington between the first and second trials. The district court did not permit Petitioner to use the impeachment evidence, reasoning that the theft conviction had very limited probative value given the limited nature of the testimony that Jeremy would give. Jeremy testified about the one sexual incident at trial. Jeremy also admitted that, the same year Petitioner was charged, he ran up about $2,000 in phone sex bills on Petitioner's account, which made Petitioner upset.

J.O. and Jeremy's mother, Connie, testified that, after J.O. accused Petitioner of the wrongful touching initially, Connie spoke to Petitioner, and he said that he was only tickling J.O. and did nothing wrong. Connie did not hear any other reports of sexual abuse until J.O. had reached the age of majority and moved out.

Petitioner did not testify at trial. A friend of Petitioner testified that Petitioner did remodeling work on her home, and J.O. came with Petitioner about 90 percent of the time, and nothing appeared to be wrong between them. She testified that, when Petitioner was accused of the crimes, he was "very, very emotional, he would talk for a little bit and cry. He was just basically, in [her] estimation, totally distraught and unbelieving." (State's Lodging C-2.)

**MEMORANDUM DECISION AND ORDER - 7**

Petitioner was convicted of all counts during the second trial. The court imposed consecutive sentences that added up to ten additional fixed years of confinement than had been meted out in the first sentencing hearing—25 years instead of 15 years. On direct appeal, the Idaho Court of Appeals reduced Petitioner's aggregate set of sentences to the original sentences. (See State's Lodgings.)

## 2.  Claims Presented

Petitioner, acting pro se, brings five claims in his Petition for Writ of Habeas Corpus: (1) a claim that (a) the presence on the jury of Juror Hendrickson, who knew Petitioner and Connie, violated his due process and fair trial rights, and (b) his counsel was ineffective for not removing the juror; (2) a claim that the court's use of the psychosexual evaluation from the first trial in the second trial's sentencing proceedings violated his due process rights under the Fifth and Sixth Amendments; (3) a claim that his Sixth Amendment due process and fair trial rights were violated when the juror who knew him communicated extra-record facts to the other jurors; (4) a claim that his trial counsel performed ineffectively by (a) failing to file a meritorious Rule 35 motion and (b) failing to pursue an adequate direct appeal; and (5) a claim that the trial court's failure to permit him to use certain impeachment evidence was contrary to his right to due process and Idaho Rule of Evidence 609.

## 3.  Procedural Default Issues

Respondent argues that Petitioner's claims are entirely or partially procedurally defaulted because they were never presented to the Idaho Supreme Court. Petitioner

**MEMORANDUM DECISION AND ORDER - 8**

himself prepared the post-conviction petition, a first attorney prepared the reply to the State's motion to dismiss, a second attorney handled the post-conviction evidentiary hearing on the remaining claims, and a third attorney determined what should be presented on appeal. As a result of this frequent "changing of the guard," the claims seem to have gone through a metamorphosis during the state court action, depending upon how the attorney interpreted the claims and how the attorney strategically reacted to each court's rulings. Determining the procedural default issues in this case is made somewhat more difficult by the fact that all of Petitioner's claims were not specifically addressed in the state court opinions. The oddities in this case were such that an Idaho Court of Appeals' judge wrote a concurring opinion giving the district court and post-conviction attorneys advice on how to make the process more clear and efficient in future cases. (See State's Lodging F-5, p. 10, Lansing, J., specially concurring.)

## A.  Standard of Law

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This means that the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have

fairly presented all his federal claims at least in a petition seeking review before that court. *Id.* at 847.

To fairly present his claims, a petitioner must assert the substance of his claims, including the "operative facts" and "legal principles" underlying each claim, to the state court. *Picard v. Connor*, 404 U.S. 270, 277–78 (1971). The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). General references in state court to broad constitutional principles, such as due process, equal protection, or the right to a fair trial, without more, are insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). In *Duncan v. Henry*, the United States Supreme Court clarified that state appellate courts must not be left to guess whether a petitioner is presenting a constitutional issue:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

513 U.S. at 356-66.

Courts of precedent have recognized at least four different ways to properly present a federal claim in state court. The first is to "explicitly" reference specific provisions of the federal Constitution or federal statutes. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001). Proper exhaustion in this manner "demands more than drive-by citation, detached from any articulation of an

**MEMORANDUM DECISION AND ORDER - 10**

underlying federal legal theory." *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005); *see Johnson v. Williams*, 133 S.Ct. 1088, 1095 (2013) ("[A] state court may not regard a fleeting reference to a provision of the Federal Constitution or federal precedent as sufficient to raise a separate federal claim. Federal courts of appeals refuse to take cognizance of arguments that are made in passing without proper development. State appellate courts are entitled to follow the same practice.").

The second way to properly present a federal issue in a state court appellate brief is to cite to federal case law that directly supports one's claim. The "citation of irrelevant federal cases does not provide a state court with a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Castillo v. McFadden*, 399 F.3d at 1001.

The third way is to cite "state cases involving the legal standard for a federal constitutional violation," rather than to cite a specific constitutional provision. *Castillo v. McFadden*, 399 F.3d at 999; *see Johnson v. Williams*, 133 S.Ct. at 1094 ("there are circumstances in which a line of state precedent is viewed as fully incorporating a related federal constitutional right"). To satisfy the exhaustion requirement, the state cases cited must "engage[] in a federal constitutional analysis." *Fields v. Waddington*, 401 F. 3d 1018, 1021 (9th Cir. 2005).

A fourth way to accomplish proper exhaustion is to "refer[] to a state constitutional right when the contours of the federal and state constitutional rights are identical." *Sanders v. Ryder*, 342 F.3d 991, 1000-01 (9th Cir. 2003). Where the state courts have held that the right under the state constitution is coextensive with the federal

**MEMORANDUM DECISION AND ORDER - 11**

constitutional right, and have analyzed both types of claims under federal standards, the federal aspect of the claim is considered properly presented to the state courts, so long as there is nothing in the briefing suggesting that the petitioner meant to allege "specifically," "consistently," and "exclusively" a violation of his state constitutional right. *Sanders*, 342 F.3d at 999 (citing *Peterson v. Lampert*, 319 F.3d 1153, 1157 (9th Cir. 2003) (*en banc*)).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts (as discussed directly above); (2) when a petitioner has completely failed to raise a claim before the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In *Loveland v. Hatcher*, 231 F.3d 640 (9th Cir. 2000), the Court explained that "*if it is unclear* whether the state court dismissed the petition because of a state law procedural default or on the merits of the petitioner's federal constitutional claims, a federal court may review the merits of the claims presented." *Id*. at 643 (emphasis in original) (citing *Siripongs v. Calderon*, 35 F.3d 1308, 1371 (9th Cir. 1994)). If a state court concluded that a petition was "denied both for reasons of procedural default and on

**MEMORANDUM DECISION AND ORDER - 12**

the merits," as in *Siripongs*, then that is not a clear expression of procedural bar and the federal court may review the merits of the claim. *Loveland*, 231 F.3d at 643. However, if a state court "independently stated that [the] petition was procedurally barred because it was untimely and then separately concluded that [the] claims were without merit," the decision is considered a clear expression of state procedural bar, which, if adequate and independent, will preclude federal habeas review. *Id.* at 643-44; *see also Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) (even if a state court reaches the merits of a federal claim in the alternative, federal review is barred "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision").

### B.   Claim One(a), Three, and One(b)

Petitioner brings three related claims regarding Juror Hendrickson: Claim One(a), that the presence on the jury of Juror Hendrickson served to "bias" the trial, violating Petitioner's due process rights; Claim Three, that his Sixth Amendment due process and fair trial rights were violated when Juror Hendrickson communicated extra-record factual allegations to the other jurors; and One(b), that trial counsel was ineffective for failing to strike Juror Hendrickson from the jury.

It was established during voir dire that Juror Hendrickson knew Petitioner because Hendrickson had sold Petitioner construction supplies in the past, and that Hendrickson had worked at the same supply company with, but in a different department than, the victim's mother. After assuring the court and counsel that his knowledge would not affect his impartiality, Juror Hendrickson was permitted to remain on the jury.

Petitioner raised this claim in his post-conviction action in a manner consistent with Claim One(a) in the federal Petition, that Petitioner's due process rights were violated by Hendrickson's presence on the jury because of Hendrickson's familiarity with Petitioner and the victim's mother. Petitioner made a reference to the Sixth Amendment in his state post-conviction petition, but not to any particular clause. Nothing in his claim suggested that he was making an ineffective assistance of counsel claim regarding Juror Hendrickson under the Sixth Amendment; rather, from the context of the claim, it appeared that Petitioner was citing to the Sixth Amendment clause that a criminal defendant has a right to be tried by "an impartial jury." (State's Lodging E-1, p. 2.) In reply to the State's motion, Petitioner's first post-conviction attorney raised for the first time the issue of whether Hendrickson did anything to "poison the well in the jury room with his knowledge or the petitioner" (which corresponds to Claim Three here). In addition, the first attorney mused, almost as an afterthought: "To some extent, this issue can be viewed as one of ineffective assistance of counsel" (which corresponds to Claim One(b) here) (State's Lodging E-1, p. 54.)

The trial court granted the motion for summary dismissal as to the Juror Hendrickson claim on two grounds: "This is an issue that was appropriate for review on direct appeal. Further this is not an issue for which there is a substantial factual showing that the Petitioner's assertions raise a substantial doubt about the reliability of the findings of guilt in this case." (State's Lodging E-1, p. 5.) The state district court cited to case law governing the issue of jurors who were already familiar with the facts of a case

when called to jury duty, including a state case relying on *Irvin v. Dowd*, 366 U.S. 717 (1961), and the court analyzed Hendrickson's responses during voir dire. (*Id.*, pp. 5-6.)

On post-conviction appeal, Petitioner raised two claims related to Juror Hendrickson. First, Petitioner asserted that the state district court erred procedurally by dismissing the claim on a basis not asserted by the State—that the claim should have been raised on direct appeal. (This claim corresponds to no claim in the federal petition, because it is a state-law argument.)

Second, Petitioner asserted on appeal that the state district court applied the wrong standard to the merits analysis of Juror Hendrickson's participation on the jury, thus denying Petitioner due process of law; this claim was based on the proposition that the due process claim "could only be proven if he could establish that Mr. Hendrickson influenced the jury through introduction of extraneous prejudicial information." Petitioner cited to *United States v. Keating*, 147 F.3d 895 (9th Cir. 1998), which held that "when a juror communicates objective extrinsic facts about the defendant to other jurors, the juror becomes an unsworn witness within the meaning of the Confrontation Clause." *Id.* at 899. (State's Lodging F-2, p. 9.)

At that point in the state proceedings, Petitioner's second attorney had transformed the claim from a Claim One(a) theory to a Claim Three theory; that is, Petitioner's original claim in the post-conviction petition was *not* that Hendrickson communicated extra-record evidence to other jurors (Claim Three here), but simply that Hendrickson's previous knowledge affected his own ability to be impartial (Claim One(a) here). The state district court did not call for a formal amendment of the pleadings, nor did the

**MEMORANDUM DECISION AND ORDER - 15**

appellate court identify the slightly different claim as procedurally barred for failure to

present it that way to the state district court. There is no indication in the record that the

Idaho Court of Appeals rejected this claim on a procedural ground.

The claim simply was not mentioned in the opinion, even though it is clear from

Petitioner's opening appellate brief that the third attorney was contesting both the

procedural aspect (a non-claim here) and the merits-based aspect (Claim Three here) of

the state district court's dismissal of this claim:

> The district court not only summarily dismissed [Petitioner's] due
> process claim without proper notice; the court *also* dismissed the claim
> based upon the wrong standards. The district court dismissed the claim
> because it concluded that the claim should have been raised on direct
> appeal *and because* it concluded that [Petitioner] had failed to raise a
> substantial doubt about the reliability of the finding of guilt. *Both of these
> conclusions* are contrary to the applicable law.

(State's Lodging F-2, p. 8 (emphasis added.)[2]

As to the procedural issue, the Idaho Court of Appeals concluded that, because the

district court had specified an alternative basis for dismissal that was included in the

State's briefing—*State v. Yager*, 85 P.3d 656 (2004)—the requisite notice requirement

was fulfilled. (State's Lodging F-5, pp. 4-5.) After discussing the procedural issue, the

Idaho Court of Appeals noted that, "[b]ecause Grist does not challenge the merits of this

---

[2]        Petitioner's merits-based claim was that the state district court used the standard of
"failing to raise a substantial doubt about the reliability of the finding of guilt," when it should have used
the standard "whether the information reasonably could have produced prejudice, when evaluated in light
of all the events and the evidence at trial." (State's Lodging F-2, pp. 8-9.) By presenting the claim this
way, Petitioner's counsel strategically tried to reverse the summary dismissal by asserting that the due
process claim needed to be fleshed out by extra-record evidence of whether the juror "poisoned the well,"
something that could be done on post-conviction review and could not have been done on direct appeal.

**MEMORANDUM DECISION AND ORDER - 16**

basis for summary dismissal of his juror bias claim we need not further address it."
(State's Lodging F-5, p. 6 n.1.) This Court finds this statement consistent with the
record—Petitioner's appellate briefing did not mention of the merits of the claim of
Hendrickson's own bias (Claim One (a) here); rather, by this time, the claim had
morphed from one regarding Hendrickson's own bias, to one necessarily dependent upon
the question of whether he communicated any extra-record evidence to the jury (Claim
Three here). Petitioner's appellate briefing also mentioned no ineffective assistance of
counsel claim based on Juror Hendrickson (Claim One (b) here).

This leads to the next point, which is that the Idaho Court of Appeals did not
explicitly address Petitioner's extra-record evidence juror claim (Claim Three here), even
though it was presented in Petitioner's opening brief in a separate section with a separate
subheading from the procedural issue. What does the state court's failure to explicitly
address a federal claim mean for this case? In *Johnson v. Williams*, 133 S. Ct. 1088
(2013), the Supreme Court held that, if a state court addressed some claims on the merits,
and dismissed the entire petition without addressing other claims, there is a rebuttable
presumption that the unaddressed claims were dismissed on their merits, and AEDPA
deference applies, meaning that the claims can be heard in federal court, but not de novo.

In the petition for review addressed to the Idaho Supreme Court, Petitioner's third
attorney raised no ineffective assistance theory but raised the Juror Hendrickson due
process claims of procedural error (lack of notice) and of providing extra-record evidence
to the jury, referencing the appellate briefs and attaching the Idaho Court of Appeals'
opinion as an appendix, to more fully present the argument. (State's Lodging F-7, p. 4 &

**MEMORANDUM DECISION AND ORDER - 17**

Appendix.) Respondent contends that this is not enough to fairly present the argument to the Idaho Supreme Court for federal exhaustion purposes.

Idaho Appellate Rule 118(c)(1) specifically provides that "discussion and argument should be limited to the criteria for review." There is no explanation in any case law regarding what, exactly, "limited" means, and the criteria for review are global principles set forth in the statute, such as "[w]hether the Court of Appeals has decided a question of substance not heretofore determined by the Supreme Court," or "[w]hether the Court of Appeals has decided a question of substance probably not in accord with applicable decisions of the Idaho Supreme Court or of the United States Supreme Court." I.A.R. 118(b)(1)&(2). Clearly, some mention of the particular claims that meet the criteria is required by this rule, but the Rule does not specify to what extent.

The statute states that "after" and "if review is granted, the Supreme Court will rely on the original briefs filed by the parties and considered by the Court of Appeals." I.A.R. 118(c)(2). It is unclear from the Rule whether the Idaho Supreme Court looks to the brief *when deciding* to grant a petition for review, as well. Because the Rule does not prohibit referencing the appellate briefs and attaching an appendix as a way to present arguments to the state appellate courts, and because Idaho has specified no prohibitions on how to accomplish the presentation of issues in a petition for review (either by rule or case law), the Court concludes Claim Three was properly presented to the Idaho Supreme Court, and the Court will consider the merits of the claim below. *See Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005) (an appendix attached to a motion for discretionary review may be considered for purposes of fair presentation if not prohibited

**MEMORANDUM DECISION AND ORDER - 18**

by state rule).[3] By the same token, Claim One(a) (personal impartiality) and Claim One(b) (ineffective assistance of counsel) were not properly presented and are procedurally defaulted.

### C.  Claim Two

Claim Two is a Fifth Amendment due process violation based upon improper use of Petitioner's psychosexual evaluation.[4] This claim was articulated in state court as a Fifth Amendment *due process* claim *and* a Sixth Amendment ineffective assistance of counsel claim, with *both claims based on* "the Court using an outdated psychosexual evaluation that was ordered by the court and prepared *in violation of the Fifth Amendment right to be free from self-incrimination*." (State's Lodging E-1, p. 15 (emphasis added).)

Addressing claims of due process and self-incrimination, the United States Supreme Court has explained: "Over time, our cases recognized two constitutional bases for the requirement that a confession be voluntary to be admitted into evidence: the Fifth Amendment right against self-incrimination and the Due Process Clause of the Fourteenth Amendment." *Dickerson v. United States*, 530 U.S. 428, 433, (2000). The

---

[3]   As to required briefing procedures, Idaho Appellate Rule 118 provides only:

  (1) In support of review. The brief in support of the petition for review must address the criteria for review set out in subsection (b) of this rule, and discussion and argument should be limited to the criteria for review. There is no response to a petition for review unless the Supreme Court requests a party to respond to the petition for review before granting or denying the petition. A brief in support of or in opposition to a petition for review does not need to be bound or have any colored cover.

[4]   The Fifth Amendment Due Process Clause is applicable only to the federal government, but because the Fourteenth Amendment Due Process Clause mirrors the Fifth Amendment but applies to the states, courts construe "due process" claims brought by pro se individuals against states as Fourteenth Amendment due process claims.

**MEMORANDUM DECISION AND ORDER - 19**

Fifth Amendment protects against use of a coerced confession in criminal proceedings, while the Fourteenth Amendment protects against government questioning methods that are "so brutal and so offensive to human dignity" that they "shoc[k] the conscience." *Chavez v. Martinez*, 538 U.S. 760 (2003). Because there are no allegations that the psychologist's questioning methods in the psychosexual evaluation were brutal and shocked the conscience, the Court construes Petitioner's claim as implicating only the Fifth Amendment's self-incrimination clause.

Petitioner's first counsel argued the claim as a procedural one—that Petitioner *should have been given notice* that he had a right not to have the self-incriminating evaluation from the first case used in the second sentencing hearing. He alternatively argued the claim as an ineffective assistance claim. In denying a portion of the State's motion for summary dismissal, the state district judge addressed only the ineffective assistance of counsel aspect of this claim, not the Fifth Amendment due process or self-incrimination portions of the claim. (*Id.*, p. 150.)

Petitioner's second counsel argued the claim as a Fifth Amendment self-incrimination claim in one section of Petitioner's post-hearing brief, and argued the claim as a Sixth Amendment ineffective assistance claim in a different section of the brief. (State's Lodging E-1, p. 105, pp. 4-6.) After the evidentiary hearing, the state district court addressed only the Sixth Amendment ineffective assistance claim, acknowledging only that the underlying Fifth Amendment right to be free from self-incrimination was the standard *upon which the effectiveness of counsel claim was being evaluated*. (*Id.*, pp. 154-70.)

**MEMORANDUM DECISION AND ORDER - 20**

Petitioner's third attorney omitted the Sixth Amendment ineffective assistance claim on appeal, arguing only that the trial court erred in failing to address the Fifth Amendment portions of the due process claim. (State's Lodging F-2.)

In defense of the state district court's omission of this claim from its dismissal order, the Court of Appeals reasoned that (1) Petitioner raised the Fifth Amendment claim in his post-conviction petition, but that he largely focused his argument on the Sixth Amendment ineffective assistance companion claim; and (2) Petitioner did not object to the state district court's failure to address the Fifth Amendment claim at any time during the proceedings. (State's Lodging F-5, p. 8.)

The Court of Appeals' first reason is not borne out by the written record (although the ineffective assistance claim may have been the focus at oral argument). As noted above, Petitioner and his counsel consistently presented both Fifth *and* Sixth Amendment claims throughout the post-conviction district and appellate court proceedings.

As to the Court of Appeals' second reason, it is not clear from the opinion that the court held that Petitioner's claim was barred for failure to object to the state district court's omission of the claim from its decision disposing of the case. (State's Lodging F-5, pp. 8-9.) In Petitioner's case, the Idaho Court of Appeals made only a passing remark regarding Petitioner's failure to bring the omission to the court's attention in his case, and then it focused its opinion on the merits of the claim. In contrast, in a case decided later that same year, *Caldwell v. State*, 358 P.3d 794, 802-03 (Idaho Ct. App. 2015), the Idaho Court of Appeals went through a lengthy analysis showing that the failure to bring such an omission to the attention of the state district court is considered a waiver of the claim

MEMORANDUM DECISION AND ORDER - 21

and a failure to preserve the claim for appeal. In Petitioner's case, the opinion's summary and conclusion paragraph does not explicitly say that the claim was procedurally barred, but focused on the merits: "[E]ven assuming [Petitioner] properly raised an independent Fifth Amendment claim regarding his participation in the PSE,[5] the district court did not err by denying the claim because [Petitioner] did not assert the requisite facts (that he exercised his right) to sustain a Fifth Amendment violation." (State's Lodging F-5, p. 9.)

Petitioner raised this claim in his petition for review addressed to the Idaho Supreme Court, in the manner set forth above, which the Court deems adequate. (State's Lodging F-7, p. 2.) Therefore, the Court concludes that the Idaho Court of Appeals' opinion does not clearly rest on a procedural bar as to a Fifth Amendment self-incrimination claim, and that the opinion disposed of the claim on the merits. Therefore, Petitioner may proceed to the merits of his Fifth Amendment self-incrimination claims regarding the psychosexual evaluation used in the second sentencing hearing. That claim is addressed below in the merits section of this Order.

### D.  Claim Four(a)

Claim Four(a) is a Sixth Amendment claim that Petitioner's counsel was ineffective for failing to file a meritorious Rule 35 motion for reduction of his sentence. (Dkt. 16.) Petitioner raised the Rule 35 issue in his post-conviction petition, and it was summarily dismissed. On appeal, Petitioner raised the claim that the state district court

---

[5]      Moreover, the procedural bar discussed in the body of the opinion was not Petitioner's failure to raise it, but Petitioner's failure to object to the state district's court omission of any discussion about the claim in its dismissal order.

erred *by summarily dismissing the claim without proper notice*, because the State had not addressed in its motion any reasons the claim should be dismissed. (State's Lodging F-2, p. 10.)

The Idaho Court of Appeals determined that, under *Kelly v. State*, 236 P.3d 1277, 1282 (Idaho 2010), so long as the State includes a generic statement that it is seeking dismissal of all claims for lack of a proper evidentiary basis or failure to state a claim, then the petitioner is deemed to have adequate notice that the claim could be dismissed. The merits of the claim were not argued or addressed in the Court of Appeals; therefore, the claim is procedurally defaulted.

### E.  Claim Four(b)

Claim Four(b) is a Sixth Amendment claim that Petitioner's counsel was ineffective for failing to file a "reasonable direct appeal." (Dkt. 16.) Petitioner did not raise an ineffective assistance of direct appeal counsel claim in his post-conviction action or on appeal. (State's Lodging F-2.) Therefore, it is procedurally defaulted.

### F.  Claim Five

Claim Five is that Petitioner's due process rights were violated, and Idaho Rule of Evidence 609 was violated, when the limitations on the impeachment of the victim's brother, Jeremy, were not applied properly. The basis of this claim is that the trial court did not permit Petitioner to impeach Jeremy with a prior felony conviction for theft from the state of Washington. (State's Lodging D-2, p. 7.) Petitioner raised the Rule 609 claim

on direct appeal, but he relied solely on a state-law abuse-of-discretion theory to do so.

(State's Lodging D-2.) In his petition for review, he also limited his argument to the state

law claim. The due process claim, based on federal grounds, is procedurally defaulted. As

a claim based on Idaho Rule of Evidence 609, it is not cognizable on federal habeas

review. *See Beaty v. Stewart*, 303 F.3d 975, 986 (9th Cir. 2002) ("state claims are not

cognizable in federal habeas proceedings").

### 4.  Exceptions to Procedural Default Rule

A procedurally defaulted claim will not be heard in federal court unless the

petitioner shows either that there was legitimate cause for the default and that prejudice

resulted from the default, or, alternatively, that the petitioner is actually innocent and a

miscarriage of justice would occur if the federal claim is not heard. *Coleman*, 501 U.S. at

749-50.

Based on the foregoing, the following claims are defaulted and can be heard only

if Petitioner can show that their default should be excused: Claim One(a), that the

presence on the jury of Juror Hendrickson served to "bias" the trial, violating Petitioner's

due process rights; Claim One(b), that his counsel was ineffective for not removing

Hendrickson from the jury; Four(a), that his trial counsel performed ineffectively by

failing to file a meritorious Rule 35 motion; Four(b), that counsel was ineffective for

failing to pursue an adequate direct appeal; and Five, a claim that the trial court's failure

to permit him to use certain impeachment evidence was contrary to his right to due

process.

### A.  Standard of Law

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

An attorney's errors that rise to the level of a violation of the Sixth Amendment's right to effective assistance of counsel may, under certain circumstances, serve as a cause to excuse the procedural default of other claims. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, an allegation of ineffective assistance of counsel will serve as cause to excuse the default of other claims *only* if the ineffective assistance of counsel claim itself is not procedurally defaulted or, if defaulted, Petitioner can show cause and prejudice for the default. *Edwards v. Carpenter*, 529 U.S. 446, 454 (2000). In other words, before a federal court can consider ineffective assistance of counsel as cause to excuse the default of underlying habeas claims, a petitioner generally must have presented the ineffective assistance of counsel claim in a procedurally proper manner to the state courts, such as in a post-conviction relief petition, including through the level of the Idaho Supreme Court.

As to another related but different topic—errors of counsel made on post-conviction review that cause the default of other claims—the general rule on procedural default is that any errors of a defense attorney during a post-conviction action *cannot*

serve as a basis for cause to excuse a petitioner's procedural default of his claims. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991). This rule arises from the principle that a petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993).

The case of *Martinez v. Ryan*, 132 S.Ct. 1309, 1319 (2012), established a limited exception to the *Coleman* rule. In *Martinez*, the court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 1315. The *Martinez* Court explained that the limited exception was created "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Id*. at 1318.

The *Martinez v. Ryan* exception is applicable to permit the district court to hear procedurally defaulted claims of ineffective assistance of trial counsel, *id*. at 1320, and ineffective assistance of direct appeal counsel, *see Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013). The exception has not been extended to other types of claims. *See Hunton v. Sinclair*, 732 F.3d 1124 (9th Cir. 2013) (*Martinez* not applicable to a defaulted *Brady* claim).

**MEMORANDUM DECISION AND ORDER - 26**

### B. *Discussion of Cause and Prejudice*

i.   <u>Traditional *Coleman* Cause and Prejudice</u>

With the help of another inmate, Petitioner has set forth some general reasons why his procedural default should be excused. He generally suggests that the Ada County Public Defenders have not been functioning in a manner required by the Constitution, when measured against national standards because their caseload is too high. Even if that is the case, Petitioner has not pointed to a causal connection between overworked public defenders and the default of his claims.

Petitioner also generally alleges that the legal resource center at the prison is so deficient that it amounts to a denial of access to the courts. However, because Petitioner was represented by counsel at trial, on direct appeal, on post-conviction review, and on post-conviction appellate review, he does not have reason to complain about lack of access to the courts in the form of an inadequate legal resource center at the prison. The law is clear that an inmate is entitled to counsel *or* an adequate alternative legal resource if pro se (not necessarily including the ability to perform research), but *not both*. *See United States v. Wilson*, 690 F.2d 1267 (9th Cir. 1982); *see also Milton v. Morris*, 767 F.2d 1443, 1447 (9th Cir. 1985); *See Waldrip v. Hall*, 548 F.3d 729, 737 (9th Cir. 2008). For these reasons, Petitioner has not shown that the lack of adequate legal resources during short stretches of time when he had no counsel to assist him caused the default of any of his claims.

ii.    *Martinez v. Ryan* Exception

Three of Petitioner's claims may qualify for the *Martinez v. Ryan* exception. Claim One(b), that counsel was ineffective for not removing the juror, is the counterpart of Claim One(a), that the juror was biased, addressed on the merits below. Because the Court concludes that Claim One(a) has no merit, Claim One(b) would necessarily fail. Therefore, it is not a substantial claim that would qualify for *Martinez* application.

Claim Four(a) is that trial counsel performed ineffectively by failing to file a meritorious Rule 35 motion. Petitioner has not shown any prejudice arising from such a failure; as a result, the claim is not substantial. Petitioner argues that, in the second sentencing hearing, the same judge pronounced a determinate sentence for the same crimes based on the same facts that turned out to be harsher than the sentence in the first case. On appeal, the Idaho Court of Appeals reduced the sentence to that which was pronounced at the first sentencing hearing, finding that the harsher second sentence after Petitioner won the right to a new trial was vindictive. (State's Lodging D-5.) The determinate portion of Petitioner's sentences were adjusted from 25 to 15 years, and he suffered no detriment that is remediable in habeas corpus—there is no right to any greater relief than he already received. Petitioner has provided no other grounds showing that a Rule 35 motion would have been successful on any ground other than the longer determinate sentences addressed above. For these reasons, Petitioner's claim is insubstantial and not subject to application of *Martinez*.

Claim Four(b), that counsel was ineffective for failing to pursue an adequate direct appeal, likewise is not substantial, because Petitioner has failed to show that, had counsel

pursued different claims, there is a reasonable probability the claims would have merited

relief. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Miller v. Keeney*, 882 F.2d

1428, 1434 n.9, 1435 (9th Cir. 1989). Therefore, *Martinez* is inapplicable.

### 5. Miscarriage of Justice

#### A. Standard of Law

If a petitioner cannot show cause and prejudice for a procedurally defaulted claim,

he can still raise the claim if he demonstrates that the court's failure to consider it will

result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494

(1991). A miscarriage of justice means that a constitutional violation has probably

resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477

U.S. at 496.

To show a miscarriage of justice, a petitioner must make a colorable showing of

factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Where the petitioner

pleaded guilty and did not have the evidence in his case evaluated by a jury, he must

show that, based on all of the evidence, "it is more likely than not that no reasonable juror

would have found Petitioner guilty…. " *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084

(9th Cir. 2001), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). Types of evidence

"which may establish factual innocence include credible declarations of guilt by another,

*see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see*

*Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d

348, 350-51 (8th Cir. 1996).

**MEMORANDUM DECISION AND ORDER - 29**

### B.  Discussion

The record does not reflect any basis to support an assertion that Petitioner is actually innocent. Therefore, this exception does not apply to excuse the default of his claims. The Court, therefore, now considers the remaining claims on the merits.

## REVIEW OF MERITS OF CLAIMS

### 1.  Standard of Law

Where the petitioner files a federal habeas corpus action to challenge a state court judgment, Title 28 U.S.C.§ 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies. Title 28 U.S.C.§ 2254(d) limits relief to instances where the state court's adjudication of the petitioner's claim:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

To assess whether habeas corpus review is warranted, the federal district court reviews "the last state-court adjudication on the merits." *Greene v. Fisher*, 132 S.Ct. 38, 45 (2011). The deferential standard of section 2254(d) applies regardless of whether the state court decision "is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99. When the last adjudication on the merits provides a reasoned opinion, federal courts evaluate the opinion as the grounds for denial. 28 U.S.C. 2254(d).

However, where the state's highest court did not issue a reasoned decision, courts within the Ninth Circuit review the decision of the Idaho Court of Appeals, using the "look through" principle of *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), and "presume the higher court agreed with and adopted the reasons given by the lower court." *Curiel v. Miller*, 830 F.3d 864 (9th Cir. 2016).[6]

---

[6]    The United States Supreme Court recently clarified: "In *Ylst*, we said that where 'the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits," but that the presumption can be refuted by "strong evidence." *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1605–06 (2016) (quoting *Ylst*, 501 U.S. at 803).

2.  **Claims One(a) and Three**

### A.  *Juror's Knowledge of Defendant as Disqualifying Factor*

Claim One(a) is procedurally defaulted. Because the default is potentially excusable by the *Martinez* exception, and it is permissible to decide procedurally defaulted claims on the merits if they are subject to denial, the Court addresses the merits of this claim. *Lambrix v. Singletary*, 520 U.S. 518 (1997) (federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.); *cf. Franklin v. Johnson*, 290 F.3d 1223 (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar").

Claim One(a), Petitioner's due process claim relating to Juror Hendrickson, is based on the allegation that Juror Hendrickson knew Petitioner and worked with the victim's mother. (State's Lodging E-1, p.14.) In his federal petition, Petitioner adds that Hendrickson knew all about the first trial, but it appears that his allegation is based on a misreading of the trial transcript, because it was a different venireperson, Sheila Otto, who disclosed that she knew all about the first trial.[7] Disregarding this mistake because it has no factual basis in the voir dire record, the Court characterizes Petitioner's claim as

---

[7]      Ms. Otto asked to be interviewed in chambers, and she stated that she had been in the jury pool for Petitioner's first trial, had followed the first trial in the newspaper, and had a friend who knew the victim's mother who informed Ms. Otto of "the whole story." Ms. Otto was excused from the jury. (State's Lodging E-1, pp. 193-96.)

one that the presence of Juror Hendrickson on the jury violated Petitioner's due process

rights because he knew Petitioner and the victim's mother.

The constitutional "right to jury trial guarantees to the criminally accused a fair

trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722

(1961). It is not necessary "that the jurors be totally ignorant of the facts and issues

involved." *Id*. Juror exposure to information about the defendant does not create an

irrebuttable presumption of prejudice. *See Patton v. Yount*, 467 U.S. 1025, 1035 (1984)

(affirming trial court's refusal to grant a new trial where several jurors had pretrial

knowledge of the defendant's prior conviction for the same crime).

However, the trial court need not accept a "juror's assurances that he is equal to

this task" as "dispositive of the accused's rights." *Murphy v. Florida*, 421 U.S. 794, 799–

800 (1975). Rather, during voir dire, the defendant has the opportunity to demonstrate

"the actual existence of such an opinion in the mind of the juror as will raise the

presumption of partiality." *Id*. at 800 (internal quotation marks omitted). In *Mu'Min v.*

*Virginia*, the Court explained:

> Under the constitutional standard … the relevant question is not whether
> the community remembered the case, but whether the jurors had such fixed
> opinions that they could not judge impartially the guilt of the defendant.
> Under this constitutional standard, answers to questions about content
> alone, which reveal that a juror remembered facts about the case, would not
> be sufficient to disqualify a juror.

500 U.S. 415, 430 (1991) (internal quotation marks and alterations omitted) (ellipsis

added). Finally, a "trial court's findings of juror impartiality may be overturned only for

manifest error." *Id.* at 428-29 (internal quotation marks omitted).

**MEMORANDUM DECISION AND ORDER - 33**

Addressing the juror claim in Petitioner's case, the state district court recited the legal standards governing juror impartiality and reviewed the voir dire examination of Juror Hendrickson. The court specifically relied on *State v. Yager*, 85 P.3d 656 (Idaho 2004) (State's Lodging E-1, p.70), in which the Idaho Supreme Court stated:

> The decision whether a juror can render a fair and impartial verdict is directed to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. It is not incumbent upon the trial judge to find jurors who are totally ignorant of the facts and issues involved in th[e] case.... To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

85 P.3d at 664 (internal quotation marks and citations omitted). The *Yager* case references *Irwin v. Dowd*, 366 U.S. 717. (State's Lodging E-1, p. 148-49.)

Applying the foregoing standards, the state district court concluded that nothing in the individual voir dire of Juror Hendrickson required the trial court to sua sponte excuse him from the panel. When asked whether he knew Petitioner, Juror Hendrickson initially answered, "No, I don't believe so," then said, "Oh, wait a minute," at which time Petitioner interjected, "Yes, you do, I bought materials from you for many years." (State's Lodging C-2, p.198.) Juror Hendrickson then said, "I'm sorry, I didn't recognize you with all the growth. I'm sorry, I do. I'm sorry, yes, he did." (*Id.*)

Juror Hendrickson then disclosed that he had worked for several supply companies and had sold construction supplies to Petitioner. Hendrickson said he used to work at Hahn's Supply, where Petitioner's "lady" (Connie) worked, and that Hendrickson had been "around him at that point and his family, yes." (*Id.*, pp. 199, 203.) He estimated it

had been eight or nine years since he had been at Hahn's. (*Id*., p. 203.) He clarified that he "really didn't know any of [Connie's] children at that point." (*Id*., p. 204.)

Juror Hendrickson elaborated that the victim's mother, Connie, worked in another part of the business, but they were not close personally. He said, "I know her and acknowledge each other and etc. [sic], out there in the world, but, no, I don't think it's a conflict situation as far as I'm concerned." (*Id*., pp. 200-01.) When asked whether he knew anything about the case, including "scuttlebutt around the water cooler, so to speak," Juror Hendrickson replied, "No, nothing, no." Juror Hendrickson stated he thought he could "examine the information and make a decision [based on evidence] that's presented before [him]" and he did not "think [he] ha[d] any predetermined . . . disposition one way or the other." (*Id*., p. 205.) Petitioner did not object to Juror Hendrickson's presence on the jury.

Based on all the foregoing, the Court concludes that the voir dire does not demonstrate that Juror Hendrickson should have been removed from the jury. His acquaintance with Petitioner and the victim's mother was at arm's length, and it was many years before trial. He knew nothing about the incidents alleged, the victim, Petitioner's criminal or family history, or the first trial. Accordingly, the Idaho Court of Appeals' opinion was not contrary to any Supreme Court precedent, nor was it an unreasonable determination of the facts in light of the evidence presented. The Court agrees with Respondent that, even under a de novo review standard, Petitioner's claim is subject to denial.

**MEMORANDUM DECISION AND ORDER - 35**

### B.   Sharing Extra-Record Evidence with Other Jurors

Petitioner alleges that Juror Hendrickson shared information he knew about Petitioner and the victim's mother with other jurors, violating Petitioner's constitutional rights. It is well-established that a criminal verdict "must be based upon the evidence developed at the trial." *Irvin*, 366 U.S. at 722. The general rule is that if a jury learns of a defendant's bad character or other crimes outside the trial process, this constitutes prejudicial error. *See Parker v. Gladden*, 385 U.S. 363, 364 (1966) (reversing a conviction where a court bailiff made prejudicial statements about defendant's "wicked" character to certain sequestered jurors). *See also Marshall v. United States*, 360 U.S. 310, 312–13 (1959) (reversing conviction where jury was exposed to newspaper articles containing reference to defendant's prior convictions where trial court had refused to permit the introduction of such evidence). The reasoning behind this rule is that, "[i]n the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana*, 379 U.S. 466, 472–73 (1965).

Generally, a jury verdict may not be impeached by proof of what jurors said or did during deliberations. *Tanner v. United States*, 48 U.S. 107, 117 (1987). However, a court may inquire into the jury's deliberations where there is a showing of improper influence. *Mattox v. United States*, 146 U.S. 140, 149 (1892); *see Parker v. Gladden*, 385 U.S. at 363.

**MEMORANDUM DECISION AND ORDER - 36**

The Supreme Court has admonished:

> [A] new trial is not required automatically whenever a jury is exposed to material not properly in evidence. Rather, a new trial is required only when there is a "reasonable possibility" that the material affected the jury verdict. Each case "must turn on its special facts."

*Marshall v. United States,* 360 U.S. 310, 312 (1959) (per curiam) (internal citations omitted).

The voir dire transcript does not show that Juror Hendrickson knew about the first trial or any facts relevant to the incidents alleged, such that he could have conveyed any significant information to the other jurors. Rather, when Petitioner alleges that Hendrickson "knew everything," it appears that Petitioner is reading the condensed four-page trial record in an up-and-down sequence, rather than following the page numbers, which go in a left-to-right sequence, and, in fact, he is reading the voir dire responses of Ms. Otter. (See Footnote 7.)

This claim will be denied on the merits because the Idaho courts' rejection of the claim is not contrary to United States Supreme Court law, especially given the lack of evidence Petitioner presented in his initial post-conviction petition, the lack of evidence presented by his post-conviction counsel, and the lack of evidence in the voir dire transcript suggesting that Juror Hendrickson knew any prejudicial facts.

### 3. Claim Two

Claim Two is that Petitioner's Fifth Amendment right against compelled self-incrimination was violated when the psychosexual evaluation ordered for the first trial's sentencing hearing was considered by the judge in the second sentencing hearing. To

**MEMORANDUM DECISION AND ORDER - 37**

successfully pursue a Fifth Amendment claim, a petitioner must show that he invoked his right not to incriminate himself, and then he was compelled to answer anyway. In *United States v. Monia*, 317 U.S. 424, 427 (1943), the Court explained:

> The Fifth Amendment … speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment.

Similarly, in *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984), the Supreme Court stated that "a witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself." *Id*. at 429.

The state district court held an evidentiary hearing and made factual findings regarding Claim Two. (State's Lodging E-1, pp.157-158.) The court found that Petitioner had participated in the evaluation on the advice of counsel, and without any admonition by counsel that he had the right to remain silent. The evaluation was used again, in part, because Petitioner refused to be evaluated a second time after the second guilty verdict. (State's Lodging E-1, pp.157-158.) The state district court also found that the sentencing court "made minimal reference to the psychosexual examination during sentencing," and that Petitioner's defense counsel "made reference to the psychosexual examination when arguing factors in support of mitigation." (State's Lodging E-1, p.165.)

In rejecting a "stand-alone Fifth Amendment claim," the Idaho Court of Appeals concluded that Petitioner failed to show a Fifth Amendment violation because he did not ever actually assert a Fifth Amendment privilege, but chose to cooperate with the first

**MEMORANDUM DECISION AND ORDER - 38**

evaluation. (State's Lodging F-5, pp.8-9.) The Court of Appeals also found that Petitioner did not demonstrate that he "was threatened with penalty if he did not participate." (*Id.*, p.9.)

Petitioner's psychosexual evaluation in the first trial occurred during the same time frame the Idaho Supreme Court issued its momentous *Estrada* decision.[8] As occurred in most sex offense cases before *Estrada* was applied, the sentencing court ordered a psychosexual evaluation, Petitioner did not object, and the evaluation was performed. In preparation for the second sentencing hearing (post-*Estrada*), the court and counsel discussed whether a supplemental psychosexual evaluation was necessary. It was agreed that it was unnecessary, as Petitioner had been incarcerated during the time period between sentencings, so that nothing new would be added to the report; in addition, counsel reported that Petitioner would not cooperate with another evaluation. Petitioner never objected to the first evaluation being used in the second sentencing hearing, and, therefore, it was never used *over an assertion* of a Fifth Amendment right to have it excluded in the second proceeding. (See State's Lodging C-2, pp. 543-50.)

This Court finds no United States Supreme Court precedent holding that facts similar to Petitioner's amount to a Fifth Amendment self-incrimination violation. There is no case holding that a court order to participate in a psychosexual evaluation prior to, and in the absence of, an assertion of any Fifth Amendment privilege amounts to a due

---

[8] In *Estrada v. State*, 149 P.3d 833, 838-40 (Idaho 2006), the Idaho Supreme Court determined that the Sixth Amendment guaranteed the right to the assistance of counsel for advice regarding whether to participate in a psychosexual evaluation for purposes of sentencing or to assert his Fifth Amendment right.

**MEMORANDUM DECISION AND ORDER - 39**

process or self-incrimination violation of the Fifth or Fourteenth Amendments.

Accordingly, the Idaho Court of Appeals' resolution of the Fifth Amendment claim was

not contrary to Supreme Court precedent, nor was it an unreasonable determination of the

facts based on the evidence presented. The Court also agrees with Respondent's

argument that, because Petitioner did not ever invoke his Fifth Amendment right, the

claim also fails under de novo review. As a result, this claim, under either a due process

or self-incrimination theory, is denied. This resolves all Petitioner's claims; therefore, the

Petition for Writ of Habeas Corpus will be dismissed and denied on the merits.

## ORDER

### IT IS ORDERED:

1.     Respondent's Motion to Strike Traverse Exhibits (Dkt. 24) is GRANTED.

2.     Petitioner's Motion for Clarification (Dkt. 30) is GRANTED to the extent
that the Court has answered Petitioner's question in this Order.

3.     Petitioner's Objection to Order of Reassignment (Dkt. 32) is
OVERRULED, and Petitioner's Motion to Proceed (Dkt. 32) is GRANTED
to the extent set forth above.

4.     Petitioner's Motion for Review Informally (Dkt. 31) IS DENIED as MOOT.

5.     Petitioner's Second Amended Petition for Writ of Habeas Corpus (Dkt. 16)
is DENIED as to those claims addressed on the merits and DISMISSED as
to those claims that are procedurally defaulted.

6.     The Court does not find its resolution of this habeas matter to be reasonably
debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.

§ 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If

Petitioner files a timely notice of appeal, the Clerk of Court shall forward a

copy of the notice of appeal, together with this Order, to the United States

Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of

appealability from the Ninth Circuit by filing a request in that court.

DATED: March 28, 2017

B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 41**